IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EMMA L. CARSON,                                    6:15-CV-00409-BR

       Plaintiff,                              OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

       Defendant.


**ALAN STUART GRAF**
208 Pine Street
Floyd, VA 24091
(540) 745-2519

       Attorney for Plaintiff

**BILLY J. WILLIAMS**
Acting United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-2112

      Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Emma L. Carson seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

    Plaintiff protectively filed her applications on December 20, 2010, and alleged a disability onset date of March 9, 2007. Tr. 207, 222.[1] The applications were denied initially and on reconsideration. An Administrative Law Judge

---

[1] Citations to the official transcript of record filed by the Commissioner on September 10, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

(ALJ) held a hearing on February 1, 2013.  Tr. 90-105.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.  A second hearing was held on September 30, 2010.  Tr. 36-79.

The ALJ issued a decision on September 25, 2013, in which he found Plaintiff is not disabled.  Tr. 19-30.  That decision became the final decision of the Commissioner on January 6, 2015, when the Appeals Council denied Plaintiff's request for review. Tr. 1-7.  See *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000).

On March 12, 2015, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born in December 1961 and was 48 years old on her alleged onset date.  She completed the ninth grade in special-education classes.  Tr. 94.  Plaintiff has past relevant work experience as a fuel attendant, rodent-control worker, kennel attendant, cashier, and fast-food worker.  Tr. 28-29.

Plaintiff alleges disability due to "degenerative disc disease, hepatitis, asthma, high blood pressure, anxiety, Shambergs disease, recurring pneumonia, emphyzema, low thyroid, [and] depression."  Tr. 240.

3 - OPINION AND ORDER

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

4 - OPINION AND ORDER

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d

5 - OPINION AND ORDER

at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv),

6 - OPINION AND ORDER

416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity (SGA) since her March 9, 2007, alleged onset date.  Tr. 21.  The ALJ found Plaintiff met the insured status requirements through September 30, 2010.

At Step Two the ALJ found Plaintiff had severe impairments including degenerative disc disease of the lumbar spine; asthma; carpal-tunnel syndrome of the left, nondominant hand; a history of carpal-tunnel syndrome of the right hand; hypertension;

7 - OPINION AND ORDER

depression; anxiety; obesity; cannabis abuse; and mathematics disorder.  Tr. 22.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal any listed impairment.  Tr. 22.  The ALJ found Plaintiff has the RFC for less than a full range of medium-exertion work and can lift, carry, push, and pull 25 pounds occasionally and 20 pounds frequently; can stand and walk for six hours; and can sit for six hours in an eight-hour work day.  She can tolerate frequent but not constant exposure to respiratory irritants such as dust, odors, gases, and fumes; is occasionally able to handle, finger, and feel with the nondominant left upper extremity; is able to work with things rather than people or data; is able to use commonsense understanding to perform instructions provided in oral, written, or diagrammatic form consistent with a range of unskilled work at or below reasoning level (SVP) three as those terms are defined in the Dictionary of Occupational Titles (DOT); and should avoid jobs in which the ability to perform mathematics is an essential component of the work.  Tr. 27.

At Step Four the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 28.

At Step Five the ALJ found Plaintiff is able to perform the occupations of sales attendant, router, and laundry sorter.  Tr. 29.

8 - OPINION AND ORDER

**DISCUSSION**

Plaintiff contends the Commissioner erred by (1) improperly rejecting the opinion of Gregory A. Cole, Ph.D., an examining physician; (2) improperly finding Plaintiff capable of other work at Step Five; (3) failing to fully develop the record; and (4) not considering the combined effects of Plaintiff's mental and physical impairments at Step Three.

**I.   The ALJ did not err in assessing the medical evidence.**

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester*, 81 F.3d at 830. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)(examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the

9 - OPINION AND ORDER

opinion without providing specific and legitimate reasons supported by substantial evidence in the record for doing so. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066.  The opinion of a nonexamining physician by itself is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark,* 454 F.3d at 1066 n.2.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

    Dr. Cole examined Plaintiff on March 7, 2013.  Tr. 721-31.  He conducted an interview, reviewed records, and administered the Wechsler Adult Intelligence Scale-IV and Beck Depression Inventory-II.

    Plaintiff reported to Dr. Cole that she attended school through tenth grade, had poor grades, and received special education in reading and mathematics.  Tr. 722.  She quit school when she became pregnant.  She has a significant history of substance abuse: She last used methamphetamine in December 2012 and uses it every three months.  She also smokes marijuana about twice a month.

    On examination there was not any evidence of psychomotor agitation or slowing.  Plaintiff reported feeling depressed on and off for most of her life, but she denied feeling hopeless and experiencing suicidal ideation.  Plaintiff said she startled

10 - OPINION AND ORDER

easily at night and had anxiety "in crowds and in traffic." Tr. 723.

Dr. Cole found Plaintiff was able to complete a multiple-step task without errors, she was able to do simple calculations, and her delayed memory capacity was average although she gave up easily on tasks designed to assess her memory capacity. Tr. 723. Intelligence testing placed Plaintiff at the borderline level of functioning. She had a Full Scale IQ score of 77, a Verbal Comprehension score of 80, and a Perceptual Reasoning score of 90. Tr. 726. Plaintiff's score on the Beck Depression Inventory-II was 36, which indicates a severe level of depressive symptomatology. Tr. 726.

Dr. Cole stated Plaintiff would not have any difficulty understanding, remembering, and carrying out simple instructions; would have moderate difficulty understanding, remembering, and carrying out complex instructions; would have moderate difficulty interacting appropriately with the public, supervisors, and co-workers; and would have difficulty responding appropriately to usual work situations and to changes in a routine work setting. Tr. 729-30.

Dr. Cole diagnosed Plaintiff with Major Depression, Recurrent; Anxiety Disorder, NOS; Cannabis Abuse; Learning Disorders in the areas of reading and mathematics; and post-traumatic stress disorder. She also had a history of alcohol and

amphetamine abuse. Tr. 726. On Axis II Dr. Cole diagnosed Plaintiff with Borderline Intellectual Functioning. He assessed a Global Assessment of Functioning (GAF)[2] score of 51.

Dr. Cole found:

> Results of this evaluation indicated that the client exhibited problems in the areas of attention and concentration. She also was noted to have below average immediate, delayed, and working memory capabilities. It should be noted, however, that the client tended to give up easily on tasks designed to assess her memory abilities. The client had some difficulty sustaining simple routine tasks, but no problems completing a simple multiple-step task were observed. From the results of this evaluation,, if the client pursues a vocational placement in the near future, then it is presumed that her: intellectual deficits/claimed learning disorders, level of anxiety/anger management difficulties, tendency to give up easily on tasks, problems in the areas of attention and concentration, and claimed pain problems, would be the primary factors, which would impact her overall level of vocational success. In the latter area, further medical evaluation is suggested . . . .

Tr. 727.

Dr. Cole also completed a Medical Source Statement of

---

[2] Although the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* issued May 27, 2013, abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability (*see Diagnostic and Statistical Manual of Mental Disorders V* (DSM-V) 16 (5th ed. 2013)) at the time of Plaintiff's assessment, the GAF scale was used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100 (*see Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)). In the fourth edition a GAF of 51-60 indicated moderate symptoms such as flat affect and circumstantial speech, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers).

12 - OPINION AND ORDER

Ability to do Work-Related Activities (Mental).  *See* SSA Form HA-1152-U3.  Tr. 729-31.  Dr. Cole checked boxes indicating Plaintiff was moderately limited in her ability to interact with the public, to interact with supervisors, and to interact with co-workers.  Tr. 730.  Dr. Cole indicated Plaintiff was also moderately limited in her ability to understand and to remember complex instructions; to carry out complex instructions; and to make judgments on complex, work-related decisions.  Tr. 729.  The form defines "moderate" limitation as "more than a slight limitation in this area but the individual is still able to function satisfactorily."  Tr. 729.

The ALJ summarized Dr. Cole's opinion, but he did not indicate the weight he gave to it.  Tr. 25.  The ALJ found Plaintiff is limited as follows:

> . . . . perform medium work . . . with the following limitations:  able to lift, carry push and pull 25 pounds occasionally and 20 pounds frequently; able to stand and walk six hours in an eight-hour workday; able to sit six or more hours in an eight-hour workday; able to tolerate frequent but not constant exposure to respiratory irritants such as dust, odors, gases, and fumes; occasionally able to hand, finger, and feel with nondominant left upper extremity; able to work with things rather than people or data, able to use commonsense understanding to perform instructions provided in oral, written, or diagrammatic form, consistent with a range of unskilled work, at or below reasoning level (SPV3), as those terms are defined in the Dictionary of Occupational Titles (DOT); should avoid jobs in which the ability to perform mathematics is an essential component of the work.

13 - OPINION AND ORDER

Tr. 27.

Plaintiff contends the ALJ erred by failing to incorporate in his evaluation of Plaintiff's RFC all of the limitations identified by Dr. Cole. Plaintiff initially argued the limit "to work with things rather than people or data" does not adequately incorporate Dr. Cole's diagnosis of Plaintiff as moderately limited in the ability to work with coworkers, the public, and supervisors. Because the jobs identified by the VE did not include extensive contact with the public or coworkers, however, Plaintiff concedes the ALJ's error is harmless. Tr. 71-73. Plaintiff, nevertheless, continues to argue that all of the jobs cited by the VE require contact with a supervisor, and the ALJ failed to include a moderate limitation in Plaintiff's ability to work with supervisors. Plaintiff cites SSR 85-15 to support her position:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to under-stand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

The Commissioner, in turn, contends the ALJ did not err because Dr. Cole did not preclude Plaintiff from dealing with supervisors. The Commissioner points to the SSA Form HA-11152-U3 definition of "moderate" limitation as "still able to function satisfactorily" in dealing with people, including supervisors.

14 - OPINION AND ORDER

The clear language of the Form's definition of moderate limitation supports the Commissioner's argument.

In any event, Plaintiff argues SSA Form HA-11152-U3 is inherently defective because it requires a physician to make an assessment of a patient's vocational ability without knowing the kind of employment that the patient might seek, and a "moderate" limitation will not preclude any employment due to the definition of "moderate."  In addition, Plaintiff points to case law as well as to SSA Regulations that indicate vocational opinions are beyond the expertise of a medical professional.  The Court notes, however, a medical professional completing an SSA Form can and presumably does read the definition of terms and then proceeds to offer his or her opinion.

Accordingly, on this record the Court concludes the ALJ did not err because the ALJ adequately accounted for Plaintiff's limitation set out by Dr. Cole, and the ALJ provided legally sufficient reasons supported by substantial evidence in the record for the consideration he gave to Dr. Cole's opinion.

**II. The ALJ did not err at Step Five.**

Plaintiff contends the ALJ erred when he posed a hypothetical question to the VE that was less restrictive as to Plaintiff's limitations than the ALJ's assessment of Plaintiff's RFC.

The first hypothetical question posed to the VE was

15 - OPINION AND ORDER

consistent with the ALJ's RFC assessment:

> [A]ble to lift, carry, push and pull 25 pounds occasionally and 20 pounds frequently; able to stand and walk six hours in an eight-hour workday; able to sit six or more hours in an eight-hour workday; able to tolerate frequent but not constant exposure to irritants such as dust, odors, gases, and fumes; frequently, but not constantly handle - perform gross handling with the left upper extremity, which is the non-dominant extremity. . . .  This individual is able to work with things rather than people or data, and able to use commonsense understanding to perform instructions provided in oral, written, or diagrammatic form, which is consistent with a range of work, at or below reasoning level 3, but I'll further specify that I'm looking at unskilled work at or below reasoning level 3, as those terms are defined in the Dictionary of Occupational Titles.

Tr. 63.  The ALJ also found mathematical calculations could not be an essential component of Plaintiff's work.  Tr. 64.

The VE testified Plaintiff could not do her prior work under the ALJ's hypothetical, but Plaintiff could perform work as an industrial cleaner, counter-supply worker, and laundry laborer.  Tr. 64.

The ALJ modified the hypothetical posed to the VE to include limitations as to "the handling, gross handling with the left upper extremity to occasional, as - instead of frequent, does that affect the [claimant's] ability to perform those jobs?"  Tr. 65.  The VE testified the added limitation would allow the performance of work as a sales attendant, router, and laundry sorter.  Tr. 65.  The VE said the "Dictionary of Occupational Job

16 - OPINION AND ORDER

Titles labels those [jobs] as requiring frequent use bilaterally; however, based on my knowledge, understanding, and experience in the field of vocational rehabilitation, if one has limited use of the non-dominant left upper extremity that could be used on occasional basis, that it would not exclude those positions." Tr. 66.

Plaintiff contends the ALJ's decision limited Plaintiff to "occasionally able to hand[le], finger, and feel with [her] nondominant left upper extremity."  Tr. 27.  Plaintiff contends the hypothetical posed to the VE did not address Plaintiff's limitations in fingering or feeling.  Tr. 66.  The Commissioner, however, contends the VE did not limit his answer to occasional handling, but instead to general overall occasional use, which includes handling, fingering, and feeling.  The Court finds the VE's language was reasonably considered by the ALJ as including limitations of handling, fingering, and feeling.

Accordingly, the Court concludes on this record that the ALJ's hypothetical and his decision at Step Five are supported by substantial evidence in the record.

**III.  The ALJ did not fail to develop the record**.

Plaintiff contends the ALJ failed to develop the record in light of the fact that Dr. Cole did not record Plaintiff's Performance IQ score or her Verbal IQ score.  Dr. Cole administered the WAIS-IV in which the terms Verbal IQ (VIQ) and

17 - OPINION AND ORDER

Performance IQ (PIQ) have been replaced with the terms Verbal Comprehension Index (VCI) and Perceptual Reasoning Index (PRI). Dr. Cole reported Plaintiff had an VIQ of 80 and PRI of 92.

There is not any authority in this Circuit that recognizes the Verbal Comprehension Index score and Perceptual Reasoning Index scores in the WAIS-IV as the functional equivalent of the Verbal IQ score and the Performance IQ score used in the WAIS-III.  Other courts, however, have found the scores to be functionally equivalent.  *See, e.g., Fatheree v. Colvin,* No. 1:13-CV-01577-SKO, 2015 WL 1201669, at *9-10 (E.D. Cal. Mar. 16, 2015); *Plank v. Colvin,* No. 12-4144, 2013 WL 6388486 (E.D. Pa. Dec. 6, 2013).  This Court finds the reasoning of those decisions is persuasive and, accordingly, concludes the VCI and PRI scores in the WAIS-IV are the functional equivalent of the Verbal IQ score and Performance IQ score used in the WAIS-III.

Thus, on this record the Court concludes the ALJ did not fail to develop the record regarding Plaintiff's IQ scores.

### IV. The ALJ adequately considered the combination of Plaintiff's impairments.

Plaintiff contends the ALJ erred at Step Three by failing to consider whether the combination of her physical and mental impairments met or equaled in severity a Listed Impairment. Plaintiff, however, does not identify the Listed Impairment that she allegedly meets or equals in severity.

Plaintiff cites counseling notes from Jared E. Juett,

18 - OPINION AND ORDER

L.C.S.W.  In October 2011 Juett reported that "chronic pain in [Plaintiff's] back and neck are significantly impacted by high stress by way of increased hypersensitivity to pain and increased muscle tension." Tr. 550.  Juett also noted Plaintiff "has not been practicing the breathing and relaxation skills since we last met." *Id.*  The following month Juett reported:  "[T]here continues to be a need for reducing stress impact on her pain and making additional progress with relaxation training, however other factors requiring a focus on mental health treatment are impeding such progress." Tr. 549.

   Plaintiff points out the following September 2012 chart note by Juett:

> There is a strong connection between stress and increasing muscle tension and the fluctuations in the pain she experiences. Frustration and anger towards the pain is also a factor in escalating tension build-up and sympathetic over-activity.  There is evidence that chronic back pain can be significantly exacerbated by steady maladaptive stress levels.  Evidence shows that such stress impact can be reduced through relaxation training and cognitive modifications.

Tr. 515.

   Plaintiff, however, does not recite the following, which is the rest of Juett's chart note:

> This patient benefitted from this in the past and remains capable of responding again at this time.  She has stopped implementing all skills learned previously which would help her at this time to lower stress,

19 - OPINION AND ORDER

>     tension, and overall pain frequency and
>     intensity.

*Id.*

The ALJ noted Juett's opinion and considered Plaintiff's mental and physical impairments.  Tr. 22-27.  Although Plaintiff, nevertheless, asserts the ALJ failed to consider Plaintiff's stage two kidney disease, Plaintiff does not identify any functional limitations arising from that condition.

On this record the Court concludes the ALJ adequately considered at Step Three the combination of Plaintiff's mental and physical impairments and the ALJ's decision is supported by substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 10th day of May, 2016.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

20 - OPINION AND ORDER